UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TIMOTHY HUCK                             CIVIL ACTION NO. 24-cv-1796

VERSUS                                   JUDGE TERRY A. DOUGHTY

CITY OF SHREVEPORT ET AL                 MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Timothy Huck ("Plaintiff") filed suit in state court against a Shreveport Police Officer Marcus Hines, the Shreveport Police Department, and the City of Shreveport. Plaintiff's petition relied largely on state tort law but also invoked 42 U.S.C. § 1983. Defendants removed the case based on federal question and filed a motion to dismiss. Plaintiff responded by asking to amend his complaint to clarify his claims and plead them in accordance with the rules applicable in the new federal forum.

The court granted Plaintiff an opportunity to amend his complaint and noted that he could elect to delete all federal claims, which would require a remand to state court. Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 145 S.Ct. 41 (2025). Plaintiff filed an amended complaint (Doc. 20) that listed six counts, all but one of which are based on state law. The only federal count in the amended complaint is Count Five that alleges Plaintiff was "falsely arrested, detained, searched, and imprisoned by Defendants without probable cause" in violation of his Fourth and Fourteenth Amendment rights. The count also alleges that the Defendants conspired to deprive Plaintiff of his civil rights.

Before the court is a Motion to Dismiss (Doc. 23) in which Defendants attack all of the federal and state law claims asserted in the complaint. The motion was noticed for briefing, but Plaintiff did not file any opposition. For the reasons that follow, it is recommended that the court (1) grant the motion to dismiss by dismissing all federal claims for failure to state a claim on which relief may be granted, (2) decline to exercise supplemental jurisdiction over the state law claims, and (3) remand this case to state court.

**Rule 12(b)(6)**

Defendants invoke Fed. R. Civ. Pro. 12(b)(6) and challenge the amended complaint for failure to plead a claim on which relief may be granted. In assessing such a motion to dismiss, the court must accept as true all well-pleaded facts in the amended complaint and view those facts in the light most favorable to the plaintiff. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Those facts must state a claim that rises above the speculative level and is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007); Amacker v. Renaissance Asset Mgmt., LLC, 657 F.3d 252, 254 (5th Cir. 2011).

**The Amended Complaint**

Plaintiff is the owner/manager of The Phoenix 2.0 nightclub in downtown Shreveport. He made numerous noise complaints against Haze on Texas, another nightclub located down the street. Huge parties had spilled out of Haze, and the club encouraged the street parties by placing speakers that projected music into the streets. Plaintiff complained that this violated Shreveport ordinances, but Shreveport Police Officer Marcus Hines

refused to act on the complaints because he was a friend of Haze's owner. Plaintiff then made multiple public complaints against Hines. First Amended Complaint, ¶¶ 10, 20-22.

Plaintiff and music promoter Tommy Willis had a dispute regarding payment of an artist. Willis threatened that he was not leaving until he was paid, and he began reaching in his bag as if he had a weapon. ¶ 11. Plaintiff ordered Willis to leave, pulled a pistol from his waistband, and pointed the pistol at the floor. Plaintiff did not point his gun at Willis or threaten him, and there were at least six witnesses who viewed the entire interaction that have verified Plaintiff's account of the event. Plaintiff states that he feared that Willis was armed and prepared to act on his threat of not leaving until he was paid. Plaintiff states that this fear was later found to be substantiated when it was discovered that Willis or his staff brought several weapons to Shreveport for the performance. ¶¶ 12-13. Plaintiff makes no allegation that Willis brandished a firearm during the encounter or that the later-discovered weapons were present in the club at the time of the dispute.

Willis contacted the Shreveport Police Department, and Officer P. Williams (not a defendant) was one of the first officers to arrive. The office took statements from Willis and Plaintiff. Willis accused Plaintiff "of pointing a pistol at Willis and threatening to shoot him." Plaintiff said that it was Willis that threatened Plaintiff, and Plaintiff denied that he ever pointed his gun at Willis or threatened him with a weapon. ¶ 14. Based on the conflicting statements, Officer Williams did not feel there was probable cause to arrest Plaintiff. Williams informed defendant Hines of everything that he had learned and turned the matter over to Hines. ¶ 15. Plaintiff and Willis told Hines that there were at least six witnesses present during the dispute, Plaintiff provided their names and phone numbers,

and the witnesses were still present at the scene and capable of being interviewed. Plaintiff asked that Hines interview the witnesses. ¶ 16.

Hines refused to interview any additional witnesses. Instead, he called a detective and reported that he had multiple witnesses that supported Willis' allegations. Hines also told the detective that Plaintiff "likely deleted any security video that showed the incident." ¶ 17. Plaintiff states that Hines' statements to the detective were false and misleading because Hines did not interview any of the witnesses, and all of them have since sworn affidavits that corroborate Plaintiff's version of events. Plaintiff made available security video that Hines "did not attempt to review prior to making his decision to arrest Plaintiff." ¶ 18. Plaintiff asserts that Hines' actions to arrest Plaintiff were personally motivated because of the history between the two men. ¶ 19. Plaintiff asserts that Hines falsely reported that he had interviewed witnesses and failed to view security video, which led to false statements to a detective in an effort to get approval to arrest Plaintiff. ¶ 23.

"Plaintiff was arrested and spent the evening in jail as a direct result of Hines' actions." ¶ 24. Before Plaintiff was released, the news broadcast the version of events told by Hines, which included false information about witnesses backing up the victim's statement. Hines, who was formerly the information officer responsible for providing information to the media on behalf of the police department, is accused of leaking the story to the media to defame Plaintiff. After the district attorney reviewed the file, no charges were filed against Plaintiff. ¶ 27.

Plaintiff alleges that the news stories resulted in the cancellation of a business deal that would have resulted in him opening several locations of a fried chicken franchise in

Page 4 of 10

the Dallas/Ft. Worth area. It also resulted in economic damage to his existing local businesses, caused him embarrassment and emotional distress, and caused his children to be teased at school. ¶¶ 28-29.

**False Arrest**

Plaintiff's amended complaint lists six counts: (1) state law false arrest and conspiracy, (2) state law false imprisonment and conspiracy, (3) state law battery and conspiracy, (4) negligence and gross negligence, (5) violation of civil rights under 42 U.S.C. § 1983/conspiracy, and (6) defamation. The sole federal claim is asserted in Count Five, which alleges that Defendants falsely arrested, detained, searched, and imprisoned Plaintiff without probable cause in violation of his Fourth and Fourteenth Amendment rights.

To prevail on a Section 1983 false arrest claim, Plaintiff must show that the arresting officer did not have probable cause to make the arrest. Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004). On the other hand, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 125 S.Ct. 588, 593 (2004). "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." U.S. v. Watson, 273 F.3d 599, 602 (5th Cir. 2001).

Hines challenges the false arrest claim and asserts qualified immunity. Even if an officer arrests someone without probable cause, qualified immunity immunizes the officer

from suit unless the officer had fair notice that his conduct was unlawful. Loftin v. City of Prentiss, Mississippi, 33 F.4th 774, 781 (5th Cir. 2022). "Fair notice requires clearly established law." Nerio v. Evans, 974 F.3d 571, 575 (5th Cir. 2020). "The onus is on the plaintiff to show that the law is so clearly established that 'every reasonable official' in the defendant-official's shoes would know not to engage in the complained-of conduct." Loftin, 33 F.4th at 781, quoting District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018).

To meet that burden here, Plaintiff would have to "identify a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment" by arresting someone without probable cause. Loftin, 33 F.4th at 781. Plaintiff did not respond to the motion to dismiss, so he has not shouldered that burden.

Furthermore, decisions have recognized that it is immaterial to the probable cause determination whether a plaintiff actually committed the crime. "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 99 S.Ct. 2689, 2695 (1979). The determinative issue in a false arrest/detention cases is whether the totality of facts and circumstances within the officer's knowledge at the moment of arrest are sufficient to establish probable cause. Cooper v. City of La Porte Police Dep't, 608 Fed. Appx. 195, 200 (5th Cir. 2015). An officer is also entitled to credit eyewitness statements and disbelieve a suspect's denial of those statements. Id. Put another way, "an arresting officer is entitled to credit some evidence, while disbelieving the arrestee's version of events." Loftin v. City of Prentiss, Mississippi, 2021 WL 3179309, *2 (S.D. Miss. 2021) (collecting cases with conflicting witness statements where probable cause was found).

"There must not even arguably be probable cause for the … arrest for immunity to be lost." Haggerty, 391 F.3d at 656. Officer Hines had at least an arguable basis for probable cause in the form of a statement by Willis, the victim/eyewitness, that Plaintiff pointed a gun at Willis and threatened him. There may have been conflicting evidence available to the officer, but Plaintiff has not pointed to clearly established law that required those conflicts be resolved in his favor at the arrest stage in these circumstances. It must also be remembered that probable cause is not a high bar and requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Loftin, 33 F.4th at 780.

Plaintiff argues that the arrest was motivated by his complaints about noise coming from Haze on Texas and Hines' lack of enforcement of the law against that club. But the probable cause "test is objective, not subjective." Sam v. Richard, 887 F.3d 710, 715 (5th Cir. 2018). "Accordingly, the officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" Id., quoting Devenpeck, 125 S.Ct. at 594. "An arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck, 125 S.Ct. at 593. Hines is entitled to qualified immunity with respect to the false arrest and related Fourth Amendment claims that are all based on an alleged lack of probable cause.

**Conspiracy**

Count Five of the amended complaint also asserts that Defendants are jointly liable for depriving Plaintiff of his civil rights in violation of Section 1983 "because they conspired with each other and acted jointly and in concert" to violate those rights. The

only defendants are the City of Shreveport, Shreveport Police Officer Marcus Hines, and the Shreveport Police Department (which is not a separate legal entity with the capacity to be sued).[1] A conspiracy requires two or more persons or entities. Courts in the Fifth Circuit apply the intra-corporate conspiracy doctrine, which provides that the acts of the agents are the acts of the corporation, and a corporation cannot conspire with itself or its agents. Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994). This doctrine applies to civil rights conspiracy claims where the defendants are a municipality and its police officer employees. Young v. City of Irving, 2025 WL 888430, *10 (N.D. Tex. 2025); Davis v. City of McLendon-Chisholm, 2025 WL 848474, *5-6 (N.D. Tex. 2025). The City of Shreveport is a single legal entity, and its employees cannot conspire with the City. Accordingly, the Section 1983 conspiracy claim must be dismissed for failure to state a claim on which relief may be granted.

**Municipal Liability**

Plaintiff's only other asserted basis for liability of the City is the assertion of respondeat superior. That doctrine may render the City liable for state law torts committed by its employees, but "[i]t is well established that a [municipality] is not liable under § 1983 on the theory of respondeat superior." Anderson v. Harris Cnty., 98 F.4th 641, 644 (5th Cir. 2024), quoting Valle v. City of Houston, 613 F.3d 536, 541 (5th Cir. 2010).

---

[1] Hicks v. Page, 2010 WL 2243584, *2 (W.D. La. 2010); Martin v. Davis, 2007 WL 763653 (E.D. La. 2007) ("Under Louisiana law, police departments are not juridical entities capable of suing or being sued.")

Accordingly, the amended complaint does not assert any plausible federal claim against the City of Shreveport or the Shreveport Police Department.

**State Law Claims**

Plaintiff's complaint is based primarily on state law claims such as defamation, negligence, and battery. There is no indication that there is a basis to exercise diversity jurisdiction, and the notice of removal invoked only federal question jurisdiction. Accordingly, the only basis for this court to exercise jurisdiction over state law claims is supplemental jurisdiction pursuant to 28 U. S. C. § 1367. That supplemental jurisdiction depends upon the presence of the federal claims over which the court has original jurisdiction.

Once the federal claims are dismissed, Section 1367(c)(3) provides that the court may decline to exercise supplemental jurisdiction over any remaining state law claims. It is recommended that all federal claims be dismissed, which would give the court discretion to then remand the remaining state law claims to state court. That is the general approach when all federal claims have been dismissed, especially when the dismissal happens early in the proceedings. Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 585 (5th Cir. 1992); Engstrom v. First National Bank of Eagle Lake, 47 F.3d 1459, 1465 (5th Cir. 1995). The federal claims are only a small part of this case, and it is recommended that they be dismissed at this early stage of the case, only about six months after it was removed and prior to the entry of a scheduling order. A similar remand of assault and slander claims was affirmed in Phelan v. Norville, 460 Fed. Appx. 376, 382 (5th Cir. 2012) after all federal claims were dismissed six months after removal. Under these

circumstances, the best exercise of the court's discretion is to decline to exercise supplemental jurisdiction and remand all state law claims.

Accordingly,

It is recommended that Defendants' Motion to Dismiss (Doc. 23) be granted in part by dismissing all federal claims against all defendants. It is further recommended that the court decline to exercise supplemental jurisdiction over all state law claims and remand this civil action to the First Judicial District Court, Caddo Parish, Louisiana.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of June, 2025.

Page 10 of 10

Mark L. Hornsby
U.S. Magistrate Judge